IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS A. SCHUELKE,

              Plaintiff,

v.                                                               OPINION and ORDER

ANDREW SAUL,                                                  18-cv-833-jdp
   Commissioner, Social Security Administration,[1]

              Defendant.

---

Plaintiff Thomas A. Schuelke seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, partially denying his application for disability benefits. The administrative law judge (ALJ) found that Schuelke was disabled between November 1, 2008 and January 25, 2011, but Schuelke appeals the ALJ's the decision to deny him benefits between January 26, 2011 and December 31, 2012, the date Schuelke was last insured. The ALJ's decision was supported by substantial evidence and Schuelke has failed to identify any reversible error. So the court will deny Schuelke's motion for summary judgment and affirm the commissioner's decision.

BACKGROUND

Schuelke applied for disability insurance benefits on November 27, 2010, alleging a disability onset date of November 1, 2008. The commissioner initially denied his application, and this court upheld her decision in June 2015. *See Schuelke v. Colvin*, No. 14-cv-139-jdp, 2015

---

[1] The court has changed the caption to reflect that Andrew Saul was recently confirmed as the Commissioner of Social Security.

WL 3539659 (W.D. Wis. June 5, 2015). Schuelke appealed to the Seventh Circuit, but before that court issued a ruling, the commissioner agreed to voluntarily remand the case based on evidence submitted after this court's decision.

On remand, Schuelke submitted additional evidence and had a second hearing before a new ALJ in April 2018. In a July 25, 2018 decision, ALJ Charles J. Thorbjornsen determined that Schuelke had two severe impairments: degenerative disc disease of the lumbar spine, status post fusion; and chronic pain disorder. He found that between November 1, 2008 and January 25, 2011, "the severity of [Schuelke's] degenerative disc disease medically equaled the criteria of section 1.04 of 20 CFR Part 404, Subpart P, Appendix 1." R. 900.[2] This refers to section 1.04 in the Listing of Impairments, which identifies certain impairments that, if shown, create a presumption of disability. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. §§ 404.1520(d), 416.920(d). Section 1.04 of the Listing refers to disorders of the spine, including degenerative disc disease, that result in compromise of a nerve root or the spinal cord.

The ALJ concluded that Schuelke did not meet the section 1.04 listing after January 26, 2011 until December 31, 2012 (Schuelke's date last insured). He based this determination on evidence that Schuelke's December 9, 2010 lumbar fusion surgery had corrected the nerve root impingement. The ALJ relied heavily on a January 25, 2011 treatment note from one of Schuelke's providers indicating that, six weeks post-surgery, there was "improvement of [Schuelke's] back pain" and resolution of his right leg pain, but some continuing "left leg pain with tingling and numbness down into the foot." R. 859 and R. 1855. The ALJ concluded that by January 26, Schuelke's symptoms had improved to the point that he had the residential

---

[2] Record cites are to the administrative transcript, located at Dkt. 7.

functional capacity (RFC) to perform sedentary work, with certain exceptions and some postural limitations. Based on this RFC and testimony from a vocational expert, the ALJ determined that, in 2011 and 2012, Schuelke could have performed jobs that exist in significant numbers in the national economy, such as a call out operator, a document preparer, and an addresser. The ALJ therefore deemed Schuelke "not disabled" and denied his application for benefits for the period between January 26, 2011 and December 31, 2012. This appeal followed.

ANALYSIS

Schuelke challenges the ALJ's decision on three grounds: (1) the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence because it was based on medical evidence that the ALJ was not qualified to interpret, and because it did not account for medical evidence that supported greater restrictions; (2) the ALJ failed to consider Schuelke's subjective reports of pain; and (3) the ALJ failed to adequately consider a previous decision by the Veterans Administration giving Schuelke a 90% disability rating.

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts, weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Id.*

## A. RFC deficiencies

Schuelke contends that the ALJ's RFC determination was not supported by substantial evidence for two reasons. First, he says that the ALJ improperly "played doctor" by drawing his own conclusions from medical evidence that he wasn't qualified to interpret. He says that the ALJ "interpreted the CT scan, the EMG and the MRI," which were "well outside the [purview] of an ALJ." Dkt. 10, at 20. An ALJ may not act as his own medical expert. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) ("[W]ithout an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment."). But that's not what the ALJ did.

In explaining why he did not include greater restrictions in the RFC, the ALJ noted that the sedentary-work restriction took into consideration "that the [2011] CT scan showed no obvious etiology for [Schuelke's] ongoing leg pain," his "EMG showed evidence of chronic left peroneal mononeuropathy but no definite evidence of an L5 radiculopathy," and his "MRI showed nothing to explain the leg pain." R. 905 (citing R. 866, R. 868). But the ALJ's record citations show that he was relying on opinions from Schuelke's treating physicians, who analyzed these scans and test results. He was not looking at the raw images and test results and analyzing them himself. The court will not remand the case on that basis.

Schuelke's second argument is that the ALJ ignored evidence in the record that "shows that Schuelke's condition did not improve" post-surgery. Dkt. 10, at 20. But this assertion is directly contradicted by the record evidence Schuelke cites. Indeed, in the very next line of his brief, Schuelke acknowledges that he reported "improvement of his back pain, and, in fact, his right leg pain had resolved." *Id.* (citing R. 587). And many of the documents that Schuelke cites (without elaboration) in support of his assertion that Schuelke's impaired walking, leg

4

weakness, and low back pain persisted post-surgery do not relate to any issues on appeal and appear to be mis-citations. *See id.* at 20–21 (citing R. 268, 201, 198, 189, 180, 174, 167, 150, 144, 141, and R. 152).

But the record does reflect that Schuelke continued to experience left leg pain and weakness, along with some low back pain, even after his fusion surgery. The ALJ acknowledged this and he adjusted the RFC accordingly. For example, the ALJ concluded that "limiting [Schuelke] to sedentary work account[ed] for the reduced strength in the lower left extremity, the diminished sensation, the limping gait, and the complaints of pain," and the postural limitations account[ed] for Schuelke's "reduced strength on the left, the diminished sensation, and [Schuelke's] reports that he had fallen a few times." R. 905. Schuelke does not explain why this RFC was inadequate or what additional restrictions should have been included, so he is not entitled to a remand on that basis. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (to demonstrate that a RFC determination is not supported by substantial evidence, a plaintiff must identify evidence that would justify further restrictions).

**B. Discounting Schuelke's subjective accounts of pain**

Schuelke next contends that the ALJ "failed to comply with SSR 16-3p in assessing Schuelke's subjective complaints of pain." Dkt. 10, at 23. Social Security Ruling 16-3p establishes a two-step process for evaluating a claimant's self-described symptoms. First, the ALJ must consider whether an underlying impairment "could reasonably be expected to produce" the individuals' reported symptoms. *See* 20 C.F.R. §§ 404.1529(b) and 416.929(b). Second, the ALJ must evaluate the intensity and persistence of those symptoms in light of other relevant evidence in the record. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c). Schuelke contends that the ALJ erred at the second step when he determined that Schuelke's "statements

about the intensity, persistence, and limiting effects" of his symptom were "inconsistent" with much of the evidence in the record. R. 904. He says that the ALJ "focused exclusively on the objective evidence" and "never assessed Schuelke's subjective complaints of pain." Dkt. 10, at 24.

Schuelke does not frame this argument as a challenge to the ALJ's credibility determination, but that is essentially what it is. Courts will overturn an ALJ's credibility determination only if it is "patently wrong," meaning the ALJ did not justify it with specific reasons supported by the record. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). Here, the ALJ considered both Schuelke's subjective self-reports of pain and explained his decision not to fully credit them. Schuelke "testified that he could not work because of the back pain," that "he spent about ½ of the month lying in bed," and that "back and leg pain would prevent him from working." R. 904. The ALJ found these statements about the intensity, persistence, and limiting effects of Schuelke's pain to be inconsistent with his statement to medical providers that his pain had improved post-surgery. R. 904 (citing R. 859, R. 1855, and R. 866). He also noted that a consulting examiner had opined that Schuelke exhibited "some exaggerating pain behavior," which made it impossible for the provider to "get a good objective test for his muscle strength because he did not feel that [Schuelke] was making a conscious effort during the exam." R. 905 (citing R. 882).

Schuelke does not acknowledge the ALJ's explanation for his credibility determination or explain why the ALJ's reliance on the report of Schuelke's exaggerating pain behavior was misplaced. Nor does Schuelke identify any specific subjective reports of pain in the record that the ALJ failed to consider. As noted above, the ALJ acknowledged that Schuelke reported continued pain post-surgery, *see* R. 904–05, and he relied on those reports in formulating the

RFC. Schuelke argues that the ALJ erred by failing to consider that "medical sources believed Schuelke's reported pain enough that they prescribed chronic pain medication." Dkt. 10, at 25. But that in itself is not evidence that Schuelke experienced levels of pain beyond what the ALJ acknowledged and accounted for. If anything, Schuelke's providers' continued prescription of pain medications indicate that those medications were helpful in managing Schuelke's pain.

Because he has provided no valid basis on which to question the ALJ's credibility determination, the court cannot say that it was patently wrong.

## C. Failure to adequately consider VA disability rating

Schuelke's final contention is that the ALJ erred by giving little weight to the 90% disability rating that he received from the Veterans Administration in May 2008. *See* R. 1298–307. Determinations made by other agencies are not binding on the Social Security Administration, but they "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies on their rules." SSR 06-3p.[3] The ALJ need not assign any particular weight to the decision of another agency, but he must explain what consideration it received. 20 C.F.R. §§ 404.1504, 416.904.

Here, the ALJ acknowledged the VA's determination that, effective October 31, 2007, Schuelke's degenerative disc disease at L4-5 and S1 was 50% disabling, and his left and right lower extremity radiculopathies were each 40% disabling. R. 905. But, the ALJ noted, "the standards utilized by the VA and SSA are not the same." *Id.* And the VA ratings predated Schuelke's fusion surgery and the subsequent medical tests and physical exams demonstrating an improvement in Schuelke's condition. R. 906. Schuelke does not explain why the ALJ should

---

[3] SSR 06-03p was rescinded on March 27, 2017, but it applies to claims filed before that date.

have accorded more weight to the VA rating given its remoteness in time and the documented improvements in Schuelke's condition post-surgery. The court discerns no error in how the ALJ handled the VA rating. *See Edwards v. Berryhill*, No. 17-cv-950-bbc, 2018 WL 5669164, at *4 (W.D. Wis. Nov. 1, 2018) (ALJ did not err by giving little weight to VA decision where subsequent medical records not considered by the VA "showed that the plaintiff's back condition later improved").

Schuelke has failed to show that the ALJ committed any reversible error. The court will deny his motion for summary judgment and affirm the commissioner's decision.

ORDER

IT IS ORDERED that Thomas A. Schuelke's motion for summary judgment, Dkt. 9, is DENIED and the administrative decision is AFFIRMED. The June 19, 2019 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered June 18, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge